**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-2184**

GEORGIA FRANKTON,

        Plaintiff - Appellant,

    v.

METROPOLITAN LIFE INSURANCE COMPANY,

        Defendant - Appellee.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   J. Frederick Motz, District Judge.
(1:08-cv-02209-JFM)

Argued:  January 26, 2011        Decided:  May 23, 2011

Before WILKINSON and KEENAN, Circuit Judges, and Irene C.
BERGER, United States District Judge for the Southern District
of West Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Jason Ehrenberg, BAILEY & EHRENBERG, PLLC, Washington,
D.C., for Appellant.  Clifford Russell Scott, METROPOLITAN LIFE
INSURANCE COMPANY, New York, New York, for Appellee. **ON BRIEF:**
Adam H. Garner, MCGUIREWOODS LLP, Baltimore, Maryland, for
Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Georgia Frankton, a former employee of Constellation Energy Group, Inc. (Constellation), brought this action against Metropolitan Life Insurance Company (MetLife), the administrator of Constellation's long-term disability plan. Frankton alleges that Metropolitan violated the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq., by terminating Frankton's long-term disability benefits. The district court awarded summary judgment in favor of Metropolitan and, upon our review, we affirm the district court's judgment.

I.

In 1976, Frankton began her employment with Baltimore Gas & Electric Company, now a subsidiary of Constellation. As a "financial reconciler" for Constellation, Frankton participated in the Constellation Energy Group Long Term Disability Plan (the Plan), which is an employee benefits plan governed by ERISA. MetLife, the Plan's claim administrator, has discretion and authority to make benefits determinations under the Plan.

In November 2002, after Frankton stopped working for Constellation due to multiple medical diagnoses, she timely

2

filed an application for long-term disability benefits.[1] To support her benefits claim, Frankton included a "personal profile," in which she described having to lie down "a good part of [the] day" to take pressure off her spine. Her "personal profile" also stated that she only drives when necessary and performs light housework in short increments.

MetLife initially denied Frankton's disability benefits claim. After Frankton timely appealed the decision, MetLife approved her claim retroactive to June 1, 2003.

On December 1, 2004, as part of MetLife's ongoing obligation to review claims under the Plan, MetLife requested additional documentation from Frankton to evaluate whether she continued to qualify as "disabled" under the Plan. MetLife explained in a letter to Frankton that the Plan's definition for "disabled" changes after a participant receives benefits for twenty-four months.[2] As relevant to this appeal, after twenty-

---

[1] At the time Frankton applied for disability benefits, she had been diagnosed with thoracic outlet syndrome, disk instability, cervical radiculopathy, cervical and lumbar facet syndrome, hyperthyroidism, coccydynia, and "TMJ."

[2] The relevant language of the Plan states:

> 'Disability' or 'Disabled' means that, due to an Injury or Sickness, you require the regular care and attendance of a Doctor and:
>
> 1. you are unable to perform each of the material duties of your job, as set forth in the

(Continued)

four months, the determination whether a claimant is "disabled" shifts from an evaluation of the claimant's ability to perform her "regular job," to an evaluation of the claimant's ability to perform "any occupation."

In response to MetLife's request for additional information, Frankton sent several documents to MetLife, including medical records from Frankton's treating physician, Dr. Nelson Hendler. According to a letter written by Dr. Hendler, Frankton was "temporarily totally disabled."

MetLife reviewed the claim file, including the documents submitted by Dr. Hendler. Based on conflicting medical reports in the file, MetLife concluded that Frankton should undergo an independent medical examination.

On March 14, 2005, Dr. John Parkerson conducted an independent medical examination of Frankton. Based on this examination and on Dr. Parkerson's review of Frankton's claim

---

Employee's job description that is maintained by the Employer; and

2. after the first 24 months of Monthly Benefit payments, you must also be unable to perform each of the material duties of any occupation for which you are reasonably or may reasonably become qualified taking into consideration your prior training or training available through a rehabilitation program offered to you and approved by us, your education, your experience and your past earnings. (MET 1037-38).

4

file, Dr. Parkerson created a report for MetLife. MetLife sent a copy of the report to Dr. Hendler and asked that he indicate any disagreement with Dr. Parkerson's findings and provide MetLife with objective evidence supporting such disagreement.

Dr. Parkerson's report included a description of Frankton's medical history and symptoms, and a list of the various medical records that Dr. Parkerson reviewed before examining Frankton. The report indicated that three of Frankton's treating physicians had opined that her symptoms had a significant psychiatric component. The report listed Dr. Parkerson's diagnoses of Frankton, including "[s]tatus post instrumented cervical fusion C4-6," possible vascular thoracic outlet syndrome, lumbar degenerative disc disease, and "depressive disorder vs. somatoform disorder."

Despite these various diagnoses, Dr. Parkerson's report stated that Frankton "could return to work at her regular job without any specific restrictions," and that "[t]he restrictions provided by the attending physician are not fully supported by the physical examination." The report stated that Frankton was not "temporarily totally disabled on a physical basis," and that her limitations "either have a primary psychiatric basis . . . or possibly a consciously self-limiting condition." The report stated that her "objective examination" was "not consistent with her reported functional status."

5

MetLife also hired a private investigator, who conducted video surveillance of Frankton both on the day of her examination and on the two days following that examination. The investigator observed Frankton walking with an "obvious limp" while entering the office for her medical examination, but later walking with a normal gait without any apparent discomfort. The investigator observed Frankton bending at the waist several times, loading groceries into her vehicle, pushing a grocery cart, carrying clothing to a dry cleaner, retrieving packages from her vehicle, and entering and exiting her vehicle without any assistance.

A few weeks after Dr. Parkerson's examination, Frankton informed MetLife that she had been awarded Social Security disability insurance benefits by the Social Security Administration (Agency). MetLife instructed Frankton to send MetLife a copy of the award letter.

MetLife never received a copy of the letter. After reviewing Frankton's claim file, MetLife determined that Frankton was no longer "disabled" within the meaning of the Plan. Accordingly, MetLife terminated Frankton's long-term disability benefits.

MetLife sent a letter to Frankton that explained the basis for MetLife's decision terminating her benefits. The letter listed the various documents that MetLife reviewed before

terminating Frankton's benefits, including the medical documents submitted by Dr. Hendler and a statement and personal health profile completed by Frankton. The letter explained that MetLife had concluded that the independent medical examination was inconsistent with Frankton's self-described physical limitations. The letter also indicated that Dr. Hendler had not responded to Dr. Parkerson's report.

Frankton appealed the decision terminating her benefits under the Plan's provisions. After Frankton submitted her appeal, Dr. Hendler sent MetLife a letter dated May 4, 2005. In the letter, Dr. Hendler indicated that he agreed with Dr. Parkerson's diagnoses, but that he disagreed with Dr. Parkerson's conclusion that Frankton's diagnoses did not preclude her from returning to work.

In October 2005, MetLife submitted Frankton's claim file, including her medical records and the May 2005 submission from Dr. Hendler, to Dr. Dennis Gordan, an independent physician consultant. After submitting the claim file to Dr. Gordan, MetLife received additional documents from Dr. Hendler. MetLife determined that these documents were largely duplicative of other documents in Frankton's claim file and, for that reason, did not send them to Dr. Gordan. Based on a review of the documents that MetLife submitted in the claim file, Dr. Gordan concluded that many of Frankton's complaints lacked any

psychological basis, and that the medical documentation was insufficient to support Frankton's claim that that she was unable to function in a sedentary job.

In November 2005, MetLife upheld its decision terminating Frankton's benefits. In a letter to Frankton, MetLife explained that Frankton's claim file lacked sufficient medical documentation to support an impairment that would have prevented Frankton from working in her most recent position, or at a position that required "sedentary type work."

In her complaint filed in the district court, Frankton alleged that MetLife failed to consider relevant medical information when reviewing Frankton's claim for benefits. After the parties filed cross-motions for summary judgment, the district court awarded summary judgment in favor of MetLife. The district court held that MetLife used a "full and fair reasoning process" in reviewing Frankton's claim by collecting medical reports from Frankton's numerous health care providers, by seeking independent evaluations of Frankton's medical records and physical condition, by considering non-medical evidence, and by considering documents prepared by Frankton describing her symptoms. The district court also held that MetLife's decision was supported by substantial evidence, including the reports of an independent medical examiner, an independent physician

consultant, and a private investigator. Frankton timely appealed to this Court.

## II.

In an appeal under ERISA, we review a district court's decision de novo, employing the same standards governing the district court's review of the plan administrator's decision. Williams v. Metro. Life Ins., Co., 609 F.3d 622, 629 (4th Cir. 2010). When, as here, an ERISA benefit plan vests with the plan administrator the discretionary authority to make eligibility determinations for beneficiaries, a reviewing court evaluates the plan administrator's decision for abuse of discretion. Id. at 629-30.

Under the abuse-of-discretion standard, we will not disturb a plan administrator's decision if the decision is reasonable, even if we would have come to a contrary conclusion independently. Id. at 630. Thus, we may not substitute our own judgment in place of the judgment of the plan administrator. Id. To be deemed reasonable, the administrator's decision must result from a "deliberate, principled reasoning process" and be supported by substantial evidence. Id. (quoting Guthrie v. Nat'l Rural Elec. Coop. Assoc. Long-term Disability Plan, 509 F.3d 644, 651 (4th Cir. 2007)).

9

In our decision in <u>Booth v. Wal-Mart Stores, Inc.</u> <u>Associates Health & Welfare Plan</u>, 201 F.3d 335, 342-48 (4th Cir. 2000), we set forth eight nonexclusive factors that courts should consider in reviewing the reasonableness of a plan administrator's decision. These factors include:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

<u>Id.</u> A reviewing court's assessment of the reasonableness of an administrator's decision is limited to a review of the documents in the administrative record. <u>Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins., Co.</u>, 32 F.3d 120, 125 (4th Cir. 1994).

III.

A.

On appeal, Frankton raises three arguments concerning the reasonableness of certain actions taken by MetLife. The district court addressed each argument in its summary judgment

10

order.[3]  Upon considering the district court's analysis described below, we agree with the district court's disposition on these issues.

According to Frankton, MetLife acted unreasonably in failing to send Dr. Hendler's most recent medical records to Dr. Gordan.  However, as the district court explained, MetLife did not receive the medical records until after MerLife had sent the claim file to Dr. Gordan.  Even though MetLife did not later send these documents to Dr. Gordan, the documents were included in Frankton's claim file when MetLife conducted its final administrative review.

According to the district court, the documents were duplicative of other documents in Frankton's claim file.  The district court found that the only document that contained new information was Dr. Hendler's most recent "office note."  The district court observed that Frankton did not indicate what substantive information that the note would have added to the

---

[3] In the district court, Frankton argued that MetLife failed to take into consideration Frankton's job description that entailed "a significant amount of standing and lifting over ten pounds, as well as pushing and pulling carts and bending over." Frankton now argues that the district court failed to consider the sitting requirements of the position.  Because Frankton did not challenge MetLife's failure to consider those sitting requirements in the proceedings before the district court, the argument is waived.  See United States v. Evans, 404 F.3d 227, 236 n.5 (4th Cir. 2005).

record. Therefore, the district court held, and we agree, that MetLife's failure to forward the "office note" was a "minor procedural violation [] not sufficient to undermine the reasonableness of MetLife's conclusions."

Next, Frankton argued in the district court that MetLife erred in failing to consider the fact that she had been awarded Social Security disability insurance. However, as found by district court, there was no evidence in the administrative record indicating that MetLife had received the letter from the Agency confirming the award of these benefits to Frankton. Therefore, the district court properly held that it would not consider the award letter in determining the reasonableness of MetLife's denial of benefits decision. See Sheppard, 32 F.3d at 125.

Although MetLife conceded that it was aware that the Agency had awarded benefits to Frankton, the district court concluded that MetLife did not abuse its discretion by reaching a different decision than the Agency's decision, because the Agency's standard for awarding disability differs from the Plan's definition of "disability." As the district court explained, MetLife is not obligated to weigh the Agency's disability determination more favorably than the other evidence in the record. See Gallagher v. Reliance Std. Life Ins., Co., 305 F.3d 264, 275 (4th Cir. 2002).

12

Frankton also argued in the district court that MetLife failed to accord the proper weight to Dr. Hendler's medical reports. However, as the district court explained, although plan administrators may not arbitrarily ignore reliable evidence, ERISA does not require that administrators accord special deference to the opinions of treating physicians. See Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003). Upon reviewing the medical reports, the district court stated that the reports of Dr. Parkerson and Dr. Gordan are "replete with references to and criticism of Dr. Hendler's records and diagnoses." Accordingly, the district court held that MetLife acted reasonably in relying on the reports of Dr. Parkerson and Dr. Gordan and in rejecting the opinion of Dr. Hendler. For the same reason given by the district court, we conclude that the court did not abuse its discretion in making this determination.

B.

Finally, we address one additional argument raised by Frankton on appeal. According to Frankton, the district court erred by failing to consider MetLife's conflict of interest in determining whether MetLife acted reasonably.

The presence of a conflict of interest is one fact, among many, that a reviewing court may consider in evaluating the reasonableness of a plan administrator's decision. Williams,

13

609 F.3d at 630. A conflict of interest exists in this case because MetLife, as the plan administrator, has authority both to evaluate benefit eligibility and to pay benefit claims. Id. at 630-31. In reviewing the reasonableness of an administrator's decision, we consider an administrator's conflict of interest because of the administrator's financial incentive to deny coverage in its claims processing. Metropolitan Life Ins., Co. v. Glenn, 554 U.S. 105, 114-15 (2008).

The record shows that MetLife attempted to make an accurate claim assessment by hiring an independent medical examiner and an independent physician consultant to review Frankton's entire claim file. According to the district court, those physicians reached "reasoned and principled conclusions." Both physicians prepared detailed reports and justified their conclusions in light of contrary reports from Dr. Hendler. Thus, we conclude that Frankton has failed to show that MetLife's conflict of interest is sufficient to outweigh the evidence of MetLife's effort in assuring an accurate claim assessment.

IV.

In conclusion, we agree with the analysis of the district court and hold that Frankton failed to raise a genuine issue of material fact regarding the reasonableness of MetLife's decision

14

to terminate Frankton's long-term disability benefits. Accordingly, we affirm the district court's judgment.

AFFIRMED