PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

FRANCINE HELTON,

　　　　　*Plaintiff-Appellee,*

v.

AT&T INC.; AT&T PENSION
BENEFIT PLAN,

　　　　　*Defendants-Appellants.*

No. 11-2153

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(1:10-cv-00857-GBL-JFA)

Argued: December 5, 2012

Decided: March 6, 2013

Before SHEDD, KEENAN, and WYNN, Circuit Judges.

Affirmed by published opinion. Judge Wynn wrote the opinion, in which Judge Shedd and Judge Keenan concurred.

## COUNSEL

**ARGUED:** Stacey Alan Campbell, LITTLER MENDELSON PC, Denver, Colorado, for Appellants. Allison Caalim Pienta, STEPHEN R. BRUCE LAW OFFICES, Washington, D.C.,

for Appellee. **ON BRIEFS:** Stephen R. Bruce, STEPHEN R. BRUCE LAW OFFICES, Washington, D.C., for Appellee.

## OPINION

WYNN, Circuit Judge:

After first learning in 2009 that she had been entitled to begin collecting her full pension benefits nearly eight years earlier, plaintiff Francine Helton contacted her pension plan seeking to recoup her lost benefits. The pension plan denied Helton's claim, and Helton, in turn, brought this action under the Employee Retirement Income Security Act of 1974 ("ERISA") against defendants AT&T Inc., her former employer, and the AT&T Pension Benefit Plan (collectively, "AT&T"). Following a bench trial, the district court found that AT&T unreasonably denied Helton's claim and failed to adequately notify her of a material change to its pension plan that allowed her to collect full benefits earlier than she had originally understood. The court awarded Helton $121,563.90 plus interest, reflecting the benefits she would have received from November 2001, when she became eligible to collect her pension benefits, until September 2009, when she was informed of her eligibility.

On appeal, AT&T challenges the district court's consideration of evidence outside of the administrative record and the court's determination that AT&T breached its statutory and fiduciary duties to Helton. AT&T also contends that the remedy the district court awarded—"retroactive" benefits—was barred by the Supreme Court's recent decision in *Cigna Corp. v. Amara*, 131 S.Ct. 1866 (2011). For the reasons set forth below, we hold that the district court properly considered limited evidence outside of the administrative record but known to AT&T when it rendered Helton's benefits determination; correctly determined that AT&T breached its statutory and

fiduciary duties to Helton; and did not err in awarding Helton her lost benefits. Accordingly, we affirm.

I.

Helton, who was born in October 1946, began working for AT&T in 1980 and moved to her present home in Arlington, Virginia in 1988. In April 1997, Helton took paid vacation time and, after her paid vacation was exhausted, an unpaid leave of absence from AT&T to open a home-cooking restaurant. She formally resigned from the company on May 31, 1997. At the time she left, Helton was a deferred vested pensioner of the Legacy AT&T Management Program of the AT&T Pension Plan (the "Pension Plan") and believed, at that time correctly, that she was not eligible to receive benefits under the Pension Plan until she turned sixty-five. AT&T both funds and, for ERISA purposes, serves as plan administrator of the Pension Plan.

In August 1997, AT&T amended the Pension Plan through a "Special Update," which, among other provisions, allowed certain participants, including Helton, to elect benefits at age fifty-five without facing any benefit reduction. AT&T attempted to notify eligible individuals about the Special Update in at least two ways: (1) through an April 28, 1997 letter from then AT&T Executive Vice President Harold Burlingame to active management employees and (2) in the Pension Plan's January 1, 1998 Summary Plan Description ("SPD"), which also was mailed to active management employees. Helton testified that she did not receive either of these communications.

Under the Special Update, Helton was entitled to begin receiving full pension benefits in October 2001, when she turned fifty-five. On March 14, 2001, AT&T employee Diane Ahlin forwarded an e-mail to the company's Pension Service Center stating: "I know that my ncs is 6-30-80 but I am not quite sure of my last date of employment. Can you please let

me know. And is it true that I am not entitled to any pension benefits until I['ve] reached the age of 65." J.A. 4101. Helton's name and social security number were at the bottom of the message, and her "ncs," an employee's start-date with AT&T, matched the one in the message. Helton testified that she did not recall sending the message and that she had never interacted with Ahlin, but said she did have those questions at the time.

The Pension Service Center's case notes for Helton indicate the Center received a request for pension information on March 14, 2001, the same day as the Ahlin e-mail was forwarded. In response, the Center prepared a calculation of benefits on April 16, 2001. The case notes further indicate that the calculation of benefits was mailed to Helton as part of a pension commencement package on April 19, 2001. According to the case notes, Helton never returned this package, which included forms Helton had to complete in order to elect her benefits. The calculation of benefits was, therefore, destroyed, pursuant to AT&T's standard practice. However, a separate AT&T record does not show that AT&T mailed the April 16, 2001 commencement package to Helton, even though it indicates that other pension materials were mailed to her. Helton testified that she did not receive a commencement package or other pension-related communication from AT&T in 2001. Helton further testified that she did not receive AT&T's 2004 SPD, which also discussed the Special Update, until 2010.

On July 31, 2009, Helton, who was approaching her sixty-fifth birthday, contacted the Pension Service Center to find out how much she would receive when she became eligible for her pension. AT&T records indicate that, in response to Helton's request, it mailed pension materials to Helton on July 31, 2009, August 18, 2009, and August 31, 2009. However, Helton testified that she only received the materials sent on August 31, 2009. In that mailing, Helton received a commencement of benefits packet stating that she was immedi-

ately eligible to begin collecting her full pension benefit, despite the fact that she had not yet turned sixty-five. [J.A. 550] After learning about the Special Update from the Pension Service Center, Helton contacted AT&T's Pension Plan administrator, AON Consulting,[1] and requested pension benefits dating back to her fifty-fifth birthday. The administrator denied Helton's request on December 16, 2009, stating that, under the Pension Plan's terms, benefits are payable on a "forward going basis and there is no provision in the Plan for retroactive pension payments." J.A. 553.

On December 29, 2009, Helton appealed the administrator's denial of benefits to AT&T's Employee Benefits Committee (the "Benefits Committee"), stating that she never received the 2001 commencement package or the Burlingame letter. Helton suggested that she might not have received the mailings because she was on personal leave at the time they were mailed or because, even when properly sent, "[t]here is often mail that is mis-delivered and often not returned." J.A. 563.

Christine Holland, an AT&T employee and secretary of the Benefits Committee, prepared the materials for the committee to consider in reviewing Helton's appeal. The administrative record Holland assembled included a brief statement of facts regarding Helton's claim, a timeline, a copy of the Burlingame letter, excerpts from the version of the Pension Plan in effect in 1998, excerpts from the 2004 SPD, a screen shot of Helton's address in AT&T's employee masterfile, and copies of correspondence between AT&T and Helton regarding her claim.

After reviewing the record, the Benefits Committee, which was composed of five AT&T human resources vice presi-

---

[1]AT&T stipulates that it is the "plan administrator" of the Pension Plan for purposes of ERISA. Appellant's Br. at 6. AT&T appointed AON to serve as Pension Plan Administrator, overseeing claims for benefits.

dents, denied Helton's appeal on March 22, 2010, affirming the administrator's decision that "retroactive" benefits are unavailable under the terms of the Pension Plan. J.A. 531. The Benefits Committee also determined that Helton was appropriately notified of the Special Update because she was an "active management employee" on August 28, 1997, when the Burlingame letter was mailed, and her "address has remained the same since at least 1988 and there was no indication that mail has been returned to [AT&T] as undeliverable from [Helton's] address." J.A. 534.

Following the Benefits Committee's denial of her appeal, Helton requested that AT&T provide her with all materials in its possession related to her claim, as required by federal law. *See* 29 C.F.R. § 2560.503-1(j)(3), (m)(8). In response, AT&T provided Helton with the Pension Service Center's case notes for her claim and a model version of the benefit calculation that would have been included in her 2001 commencement package.

On August 8, 2010, Helton filed a complaint against AT&T in federal district court alleging, among other things, that AT&T: (1) improperly denied her retroactive benefits; (2) violated ERISA's disclosure obligations by failing to inform her about the Special Update; (3) breached its fiduciary duty to keep her informed about her benefits under the Plan; and (4) failed to provide her with information she requested. The complaint sought benefits for the period between when Helton turned fifty-five and when she began receiving benefits in 2009, as well as further monetary and declaratory relief. AT&T moved for summary judgment on all claims. The district court granted AT&T's motion with respect to the fourth claim and denied the motion as to the other three claims.

Following a three-day bench trial, the district court issued its Findings of Fact and Conclusions of Law on September 16, 2011, finding for Helton on all three surviving claims. *Helton v. AT&T, Inc.*, 805 F. Supp. 2d 234, 250 (E.D. Va.

2011). The court entered a $121,563.90 judgment in Helton's favor for the first claim but awarded only declaratory relief for the remaining two claims, holding that multiple recovery would be inequitable. *Id.* AT&T appealed.

## II.

This Court reviews judgments stemming from a bench trial under a mixed standard: factual findings are reviewed for clear error, whereas conclusions of law are reviewed de novo. *Plasters' Local Union No. 96 Pension Plan v. Pepper*, 663 F.3d 210, 215 (4th Cir. 2011). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Evergreen Int'l, S.A. v. Norfolk Dredging Co.*, 531 F.3d 302, 308 (4th Cir. 2008) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). In cases in which a district court's factual findings turn on assessments of witness credibility or the weighing of conflicting evidence during a bench trial, such findings are entitled to even greater deference. *Evergreen*, 531 F.3d at 308 (noting that a district court's credibility determinations "deserv[e] the highest degree of appellate deference" (quotation omitted)); *Nationwide Mut. Ins. Co. v. De Loach*, 262 F.2d 775, 778 (4th Cir. 1959) ("[A] trial court's resolutions of questions of fact on conflicting evidence are entitled to great weight and will not be reversed except for plain error.").

On appeal, AT&T argues the district court committed factual and legal error in reversing the Pension Plan's coverage determination and awarding Helton retroactive benefits under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). AT&T also disputes the district court's largely factual finding that the Pension Plan failed to comply with ERISA reporting and disclosure requirements set out in 29 U.S.C. § 1022.[2] We address each of these arguments in turn.

---

[2]AT&T further contends that the district court erred both as a matter of law and fact in holding that Helton was entitled to equitable relief under

### III.

First, AT&T challenges the factual findings and legal conclusions underlying the district court's holding that Helton is entitled to retroactive pension benefits under 29 U.S.C. § 1132(a)(1)(B), which authorizes a plan participant or beneficiary to bring a "civil action . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

This Court reviews de novo a district court's review of a coverage decision by an ERISA plan administrator, applying the same standard of review as the district court applied. *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 629 (4th Cir. 2010). The scope of a district court's review in an action challenging an administrator's coverage determination under Section 1132(a)(1)(B) turns on whether the benefit plan at issue vests the administrator with discretionary authority. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Woods v. Prudential Ins. Co. of Am.*, 528 F.3d 320, 321-22 (4th Cir. 2008). If a plan does not give the administrator discretionary authority, a district court reviews the coverage determination de novo. *Woods*, 528 F.3d at 322.

However, when "an ERISA benefit plan vests with the plan administrator the discretionary authority to make eligibility determinations for beneficiaries, a reviewing court evaluates the plan administrator's decision for abuse of discretion." *Williams*, 609 F.3d at 629-30. Under this standard, this Court should affirm a discretionary decision of a plan administrator

---

Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). Because we hold that the district court properly awarded Helton relief under Section 1132(a)(1)(B) and because we agree with the district court that this relief made her whole, we need not, and thus do not, determine whether the district court properly found for Helton on her breach of fiduciary duty claim.

if it is the result of a "deliberate, principled reasoning process" and is supported by "substantial evidence," even if we would reach a different decision independently. *Id.* at 630.

Here, the Pension Plan states that the Benefits Committee "shall have sole and complete discretionary authority and control to manage the operation and administration of the Plan, including, but not limited to . . . interpretation of all Plan provisions [and] determination of the amount and kind of benefits payable to any Participant . . . ." J.A. 3342. Because this language gives AT&T discretionary authority in administration of the Pension Plan, we review AT&T's decision to deny Helton retroactive benefits for abuse of discretion.

AT&T contends that, under this standard of review, the district court improperly granted Helton retroactive benefits under Section 1132(a)(1)(B) for four reasons: (1) it improperly relied on evidence outside of the administrative record; (2) it erred in holding that AT&T's denial of Helton's claim was not reasonable; (3) it should have remanded the case to AT&T for reconsideration after finding that AT&T abused its discretion in denying Helton's claim; and (4) it was precluded, under the terms of the Pension Plan, from awarding Helton retroactive benefits. We disagree.

## A.

First, we address the district court's decision to consider limited evidence outside of the administrative record prepared by AT&T. Generally, consideration of evidence outside of the administrative record is inappropriate when a coverage determination is reviewed for abuse of discretion.[3] *Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir. 1994); *see also Bernstein v. CapitalCare, Inc.*, 70

---

[3]By contrast, on de novo review, district courts have limited latitude to consider evidence from outside the administrative record. *See Quesinberry v. Life Ins. Co. of N.A.*, 987 F.2d 1017, 1026-27 (4th Cir. 1993) (en banc).

F.3d 783, 788 (4th Cir. 1995). The rationale for this rule is that, to the extent possible, the administration of ERISA plans should be left to plan fiduciaries, not federal courts. *Bernstein*, 70 F.3d at 788. Additionally, promoting internal resolution of claims furthers ERISA's goals of expeditiously, efficiently, and inexpensively resolving coverage disputes. *See Perry v. Simplicity Eng'g*, 900 F.2d 963, 967 (6th Cir. 1990).

AT&T contends that in *Sheppard*, in which we set out our current approach to consideration of extrinsic evidence on abuse of discretion review, we established an absolute bar to considering evidence outside of the administrative record. Appellant's R. Br. at 6-7 ("This Court has made clear that a district court's assessment of the reasonableness of a plan administrator's decision is limited to a review of the documents in the administrative record. In applying the abuse-of-discretion standard, courts are entitled to *only* look at the evidence that was before the plan administrator and determine if the decision, based on that evidence, was reasonable . . . .").

However, a closer review of our precedent demonstrates that we have taken a more nuanced approach to consideration of extrinsic evidence on deferential review, rather than embracing an absolute bar. In particular, in discussing what evidence may be considered, we generally have focused on whether evidence was known to the administrator when it rendered its decision, not whether it was part of the administrative record. For example, in *Sheppard* we held that "the reasonableness of the administrator's decision *must be based on the facts known to it at the time*." 32 F.3d at 125 (emphasis added); *see also Elliott v. Sara Lee Corp.*, 190 F.3d 601, 608-09 (4th Cir. 1999) (same). Likewise, in *Jett v. Blue Cross & Blue Shield of Alabama*, which was the genesis of the language regarding extrinsic evidence that we used in *Sheppard*, the Eleventh Circuit emphasized that whether evidence was "known to the administrator at the time the decision was made" is the determinative consideration as to whether the district court can consider extrinsic evidence on abuse of dis-

cretion review. 890 F.2d 1137, 1139 (11th Cir. 1989). Thus, like the Eleventh Circuit in *Jett*, in *Sheppard* we did not focus myopically on whether evidence was part of the administrative record but, rather, on whether the evidence was known to the administrator when it rendered its decision.

By contrast, we have refused to consider extrinsic evidence only in cases in which a plaintiff seeking benefits sought to first introduce evidence in federal court that was unknown to the administrator. *See, e.g.*, *Elliott*, 190 F.3d at 608-09 (holding that the district court properly refused beneficiary's request for the court to consider affidavit of a vocational consultant hired by the beneficiary, when the beneficiary failed to submit affidavit to plan Appeals Committee despite having had an opportunity to do so); *Sheppard*, 32 F.3d at 124-25 (refusing to consider affidavit of beneficiary's treating physician, when beneficiary failed to submit affidavit to plan review committee); *Webster v. Black & Decker (U.S.) Inc.*, 33 Fed. App'x 69, 74 (4th Cir. 2002) (unpublished) (refusing to consider Social Security Administration determination letter when beneficiary first produced letter in federal court).

Not surprisingly, then, AT&T cannot cite, nor have we found, any case in which we have held that a district court could not consider evidence from outside of the administrative record when that evidence was known to the administrator at the time the administrator rendered its benefits determination. Indeed, other Circuits confronted with a plan administrator that knew or should have known of certain pieces of evidence outside of the administrative record have held that a district court properly considered such evidence on abuse of discretion review. *See Hess v. Hartford Life Acc. Ins. Co.*, 274 F.3d 456, 462-63 (7th Cir. 2001) (holding that district court properly considered beneficiary's employment contract, even though plan administrator said that it never saw the contract); *Brooking v. Hartford Life and Acc. Ins. Co.*, 167 F. App'x 544, 547 n.4 (6th Cir. 2004) (holding that a district

court may consider plan documents, even if such documents were not part of the administrative record).

Had *Sheppard* allowed plan administrators the unchecked opportunity to pick and choose what evidence in their possession to include in the administrative record, as AT&T argues, we would have effectively surrendered our ability to review ERISA benefits determinations because plan administrators could simply omit any evidence from the administrative record that would suggest their decisions were unreasonable. As the Seventh Circuit explained in *Hess*, "[t]he fact that [a plan administrator] did not bother to read pertinent evidence actually before him cannot shield [the plan's] decision from review." 274 F.3d at 462-63.

Although the plain language of *Sheppard* permits district courts to consider extrinsic evidence known to the administrator at the time of its review, such a reading is also compelled by the framework we have established for abuse of discretion review in actions brought under Section 1132(a)(1)(B) of ERISA. In particular, we have long recognized that certain types of extrinsic evidence often are necessary for a court to assess whether an administrator abused its discretion in denying a plan member's request for benefits.

In *Booth v. Wal-Mart Stores, Inc. Associates Health & Welfare Plan*, which was decided after *Sheppard*, we identified eight nonexclusive factors for courts to consider in evaluating whether a plan administrator abused its discretion:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision-making process was reasoned and principled; (6) whether the decision was

consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

201 F.3d 335, 342-43 (4th Cir. 2000). Since *Booth* was decided, both this Court and our district courts have applied this multifactor test on numerous occasions. *See, e.g.*, *Carden v. Aetna Life Ins. Co.*, 559 F.3d 256, 261-63 (4th Cir. 2009); *Williams v. Metro. Life Ins. Co.*, 632 F. Supp. 2d 525, 538-43 (E.D.N.C. 2008), *aff'd Williams*, 622 F.3d at 637. The *Booth* factors incorporate many principles from trust law and, in so doing, reflect a desire to ensure that plan sponsors cannot, through artful plan drafting, "impinge on the proper role of courts in enforcing contracts and establishing principles of judicial review." 201 F.3d at 343.

As is facially apparent, a district court in many cases may not be able to adequately assess a number of the *Booth* factors in the absence of evidence from outside the administrative record. For example, the fourth factor requires a court to consider whether the coverage determination at issue is consistent with earlier interpretations of the plan. Because the administrative record focuses on the coverage determination at hand, courts would have to look at extrinsic evidence concerning the plan administrator's prior coverage determinations to assess this factor. *See Gooden v. Provident Life & Acc. Ins. Co.*, 250 F.3d 329, 333 (5th Cir. 2001) (explaining extrinsic evidence is necessary to determine "how an administrator has interpreted terms of the plan in other instances" (quotation omitted)). Similarly, one can envision many circumstances in which a court would need to look to extrinsic evidence to evaluate the adequacy of the administrative record, as is required by the third factor, or the impact of a plan fiduciary's conflict of interest, as is required by the eighth factor.[4] *See*

---

[4]This is not to say that, in some cases, a court could not determine that a record was wholly inadequate on its face. *See Bernstein*, 70 F.3d at 789-

*Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1158 (10th Cir. 2010) ("[W]ithout discovery, a claimant may not have access to the information necessary to establish the seriousness of the conflict [of interest].").

Thus, were we to accept AT&T's reading of *Sheppard* and its progeny as absolutely barring consideration of extrinsic evidence, we would preclude our district courts from assessing many of the factors we have directed them to consider in determining whether an ERISA plan administrator abused its discretion. But when interpreting our precedent, we seek to reconcile our past decisions, not adopt interpretations that place them squarely in conflict. *See McMellon v. United States*, 387 F.3d 329, 334 (4th Cir. 2004) (en banc) (holding that only "when there is an *irreconcilable* conflict between opinions issued by three-judge panels" do we follow the rule that the first case decided on an issue is controlling (emphasis added)); *United States v. Hogan*, 986 F.2d 1364, 1369 (11th Cir. 1993) ("A panel . . . is obligated, if at all possible, to distill from apparently conflicting prior panel decisions a basis of reconciliation and to apply that reconciled rule.").

AT&T nevertheless identifies language in some of our decisions that, at first blush, appears to absolutely bar consideration of evidence outside the administrative record. In particular, AT&T points out that in *Williams* we noted that "[b]oth this Court and the district court conduct these [abuse of discretion] reviews based solely on the existing administrative record, rather than on any testimony or other additional evidence obtained outside the administrative record." 609 F.3d at 631. However, this comment was made in the context of addressing an entirely different issue—whether, after con-

90 (finding an administrative record was facially insufficient when it "contained very little evidence at all"). In many cases, however, the adequacy of the administrative record or the impact of a conflict of interest may become apparent only after considering extrinsic evidence.

cluding that the district court had applied the improper standard of review, it was necessary to remand the case for reconsideration. *Id.* So in that case, we merely observed that because we apply the same standard of review as the district court, and the district court had not considered any evidence from outside of the administrative record in rendering its decision, remand was unnecessary. *Id.* at 629, 631.

AT&T also cites similar language in our unpublished decision in *Frankton v. Metropolitan Life Insurance Co.*, 432 Fed. App'x 210 (4th Cir. May 23, 2011) (unpublished). However, like in *Sheppard*, *Elliott*, and *Webster*, the *Frankton* panel considered only whether it was proper for the district court to refuse to consider extrinsic evidence that was not known to the administrator when it made its benefits determination. *Id.* at 215.

Allowing for consideration of evidence outside the administrative record but known to the administrator on abuse of discretion review is consistent with the trend in our sister Circuits. Historically, most Circuits prohibited consideration of extrinsic evidence on abuse of discretion review. *See, e.g.*, *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995). Yet a number of Circuits, including this one, softened that rule by creating a less deferential standard of review for decisions by self-interested plan administrators who served both as a fiduciary to plan beneficiaries and as the party responsible for making payments under the plan. *See Williams*, 609 F.3d at 630; *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 233 (4th Cir. 1997), *rev'd by Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008); *see also Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 826-27 (10th Cir. 1996) (cataloguing the Circuits' approaches to reviewing decisions by self-interested ERISA plan administrators).

But in 2008, the Supreme Court held in *Metropolitan Life Insurance Co. v. Glenn* that although courts may consider an administrator's conflict of interest in assessing the reasonable-

ness of a benefits decision, they may not change the applicable standard of review because of such a conflict. *Id.* at 115-16. As a result, it became all the more important for courts to have access to adequate evidence to assess, for example, how a conflict of interest may have impacted the adequacy of the administrative record and, consequently, a contested benefits determination.

Since *Glenn*, Circuits have begun explicitly recognizing exceptions to the general rule barring consideration of extrinsic evidence on abuse of discretion review. Noting that "the Supreme Court's decision in *Glenn* contemplates the possibility of extra-record discovery related to a dual role conflict of interest," the Tenth Circuit now expressly permits consideration of extrinsic evidence regarding the extent and impact of a plan administrator's conflict of interest. *Murphy*, 619 F.3d at 1161-62. Similarly modifying its abuse of discretion review framework in the wake of *Glenn*, the Ninth Circuit held that courts may consider evidence from outside of the administrative record in at least three situations: (1) to determine whether and to what extent an administrator's conflict of interest adversely affected the administrative decision-making process, (2) when "procedural irregularities" undermined the development of a full administrative record, and (3) when a plan's representations caused a participant to incorrectly but reasonably believe a document was part of the administrative record. *Burke v. Pitney Bowes Inc. Long-Term Disability Plan*, 544 F.3d 1016, 1027-28 (9th Cir. 2008). And the Fifth Circuit allows consideration of extrinsic evidence in cases where procedural irregularities inhibited the development of an adequate record. *See Lafleur v. La. Health Service & Indem. Co.*, 563 F.3d 148, 158 n.22 (5th Cir. 2009).

At present, the overwhelming majority of our sister Circuits agree with the position we first embraced in *Sheppard* and do not absolutely bar consideration of extrinsic evidence on deferential review. *Compare id.* (rejecting absolute bar to consideration of extrinsic evidence on abuse of discretion review);

*Murphy*, 619 F.3d at 1162 (same); *Burke*, 544 F.3d at 1027-28 (same); *Rittenhouse v. UnitedHealth Group Long Term Disability Ins. Plan*, 476 F.3d 626, 630 (8th Cir. 2007) (same); *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006) (same); *Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 519 (1st Cir. 2005) (same); *Zervos v. Verizon N.Y., Inc.*, 277 F.3d 635, 646-47 (2d Cir. 2002) (same); *Hess*, 274 F.3d at 462-63 (same); *with Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 121 (3d Cir. 2012) (barring consideration of extrinsic evidence on abuse of discretion review); *Blankenship v. Metropolitan Life Ins. Co.*, 644 F.3d 1350, 1354 (11th Cir. 2011) (same).

In sum, under *Sheppard*, a district court may consider evidence outside of the administrative record on abuse of discretion review in an ERISA case when such evidence is necessary to adequately assess the *Booth* factors and the evidence was known to the plan administrator when it rendered its benefits determination. Since *Sheppard*, we have not had occasion to clearly address when a plan administrator can be charged with knowledge of evidence outside of the administrative record. Nonetheless, the general rule is that corporate entities, like plan administrators, have knowledge of two types of information.

First, relying on principles of agency, courts have found that "knowledge obtained by corporate employees acting within the scope of their employment is imputed to the corporation." *United States v. One Parcel of Land Located at 7326 Hwy. 45 N., Three Lakes, Oneida Cnty., Wisc.*, 965 F.2d 311, 316 (7th Cir. 1992); *Duplex Envelope Co. v. Denominational Envelope Co.*, 80 F.2d 179, 182 (4th Cir. 1935); *see generally* James D. Cox & Thomas Lee Hazen, 1 The Law of Corporations § 8:15 (2010); William Meade Fletcher, 3 Fletcher Cyclopedia of Corporations § 790 (2006). Second, because corporations are charged with knowledge of information known to their officers and because officers are charged with knowledge of information in corporate books and records,

corporate entities also have constructive knowledge of the contents of their records. *Albert Lea Foundry Co. v. Iowa Sav. Bank of Marshalltown, Iowa*, 21 F.2d 515, 518 (8th Cir. 1927); *see generally* 5A Fletcher Cyclopedia of Corporations § 2203 (2012). Therefore, an ERISA plan administrator can be charged with knowledge of information acquired by its employees in the scope of their employment and the contents of its books and records.

Turning to the case at hand, AT&T identifies several pieces of extrinsic evidence upon which it contends the district court improperly relied:

- The fact that Helton did not initially receive the 2009 commencement package and that AT&T sent a second package to Helton after her request;

- The March 14, 2001 Diane Ahlin e-mail, which did not contain a request for a commencement package;

- Helton's multiple telephone calls to the Pension Service Center in September 2009, during which she maintained that she did not receive any information about the Special Update;

- A screen shot indicating Helton's home address in 2007;

- The trial testimony of Paula Stoia;

- The trial testimony of Edwin Adam; and

- The trial testimony of Laurie Banwart.

Appellant's Br. at 26.

We hold that the district court properly considered this evidence, with the exception of the trial testimony of Adam, who

oversaw the mailing of Pension Plan communications for AT&T contractor Universal Mailing Services, and Banwart, who was employed by AON as a director of operations at AT&T's Pension Service Center. We do so, first, because the district court considered this evidence in the course of determining whether the Benefits Committee relied on adequate materials in denying Helton's appeal, one of the eight *Booth* factors. *See Helton*, 805 F. Supp. 2d at 244-45 ("There is no evidence that the [Pension] Plan administrator inquired about or evaluated the mailing procedures, and the [Benefits] Committee seemed to rubberstamp without question the administrator's assertions that the materials were sent. The [Benefits] Committee did not inquire into the mailing process.").

Second, all of this evidence, with the exception of Adam's and Banwart's testimony, was known to, or in the control of, AT&T when the Benefits Committee made its decision. The screen shots indicating the two failed mailings of Helton's 2009 commencement package, the 2001 Ahlin e-mail, recordings of Helton's September 2009 phone conversations with the Pension Service Center, and the screen shot of Helton's home address in 2007 all are AT&T corporate records that the Benefits Committee readily could have considered, had it made an effort to do so. AT&T also can be charged with knowledge of Stoia's testimony since she worked for AT&T in 2009, when the decision was rendered. *See Duplex Envelope Co.*, 80 F.2d at 182. Thus, the Benefits Committee easily could have communicated with Stoia regarding any facts relevant to Helton's claim.

However, the district court should not have considered Adam's and Banwart's testimony. Both Adam and Banwart stopped working with AT&T in 2007 and therefore had no relationship with AT&T when the Benefits Committee rendered its decision in 2009. Accordingly, AT&T was free to interview Adam and Banwart as part of its review of Helton's claim but cannot properly be charged with knowledge of their testimony.

B.

Next, keeping in mind which pieces of evidence are properly considered on deferential review, we must decide whether the district court erred in holding that AT&T abused its discretion in denying Helton's request to recoup her lost benefits. We do so with the aid of the factors set out in *Booth*. 201 F.3d at 342-43. All eight *Booth* factors need not be, and are not, in play in this case. *Booth*, 201 F.3d at 342-43. Those factors that do apply convince us that AT&T's decision to deny Helton's claim was unreasonable.

First, the decision was not supported by the language of the Pension Plan, as required by the first *Booth* factor, nor was it consistent with other terms in the Pension Plan, as required by the fourth factor. Specifically, in denying Helton's claim, the Benefits Committee pointed to language in two documents that it contended precluded the award of retroactive benefits: Section 4.06 of the Pension Plan version in effect when AT&T provided the Special Update and the 1998 SPD. Section 4.06(d) provides:

> the failure of an Employee and Spouse to consent to a distribution while a benefit is immediately distributable, within the meaning of Section 4.06(c), shall be deemed to be an election to defer commencement of payment of any benefit sufficient to satisfy this Section 4.06(d).

J.A. 3364. This provision does not address, much less preclude, retroactive recovery of benefits, particularly in cases of administrative error. While the administrator is entitled to discretion in interpreting the terms of its plan, those interpretations must be reasonable. *Booth*, 201 F.3d 335, 344 (holding that even when an ERISA plan gives an administrator broad discretion to interpret plan language, this Court "will enforce the administrator's decisions only if they are reasonable"). Here, the administrator's interpretation was not reasonable.

The 1998 SPD states that pension benefits are "payable on a forward-going basis only." J.A. 3652. While this language might be read as precluding the award of retroactive benefits, an SPD does not constitute the terms of a plan for purposes of determining whether a plan participant is entitled to a particular form of relief. *Amara*, 131 S.Ct. at 1878 ("[S]ummary documents . . . provide communications with beneficiaries *about* the plan [and] do not themselves constitute the *terms* of the plan for purposes of § 502(a)(1)(B)." (emphasis in the original)); *see also McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176, 182 n.5 (4th Cir. 2012). Therefore, neither the terms of the Pension Plan nor the 1998 SPD precluded awarding Helton retroactive benefits.

Moreover, Section 22.7.1 of the Pension Plan version in effect at the time Helton sought to recover her lost benefits explicitly allows for the Pension Plan administrator to grant "restorative" benefits:

> Plan provisions to the contrary notwithstanding, if an error has occurred in connection with the Plan . . . as a result of human or systems error, data, recordkeeping, or other administrative error, the Plan Administrator may correct the error to the extent reasonably practicable by taking any action it deems appropriate to effect such correction.

J.A. 2810. Thus, Section 22.7.1 gives the Pension Plan administrator broad authority to remedy past errors—like the failure to adequately inform Helton of a material plan change. Accordingly, the Benefits Committee's interpretation of Section 4.06(d) as precluding the award of retroactive benefits was inconsistent with Section 22.7.

Regarding the third *Booth* factor, AT&T failed to compile an adequate record to render its decision. As the district court noted, neither Holland nor the Benefits Committee inquired into the reliability of AT&T's mailing process for pension

materials, despite the fact that the two failed mailings to Helton in 2009 should have put the Benefits Committee on notice of potential problems with the mailing system generally, and the mailing of pension materials to Helton in particular. *Helton*, 805 F. Supp. 2d at 245. The Benefits Committee also did not inquire into or address whether Helton's unofficial leave of absence in April 1997 would have affected whether AT&T mailed the Burlingame letter to her. In fact, the Benefits Committee failed to investigate any of Helton's reasonable explanations for why she might not have received the Burlingame letter or 1998 SPD. Additionally, AT&T withheld from the administrative record highly relevant pieces of information subsequently produced in discovery, including the 2001 Ahlin e-mail and the screen shot indicating that Helton's home address in AT&T's employment records had an effective date of 2007.

Further, the Benefits Committee's decision was not supported by substantial evidence, as required by the third *Booth* factor. As the district court correctly explained, the administrative record includes "no physical records of any mailing, mailing lists, or other business records indicating that [the Burlingame letter and 1998 SPD] were mailed to Ms. Helton at all, and certainly no evidence specifically showing that the materials were sent to Ms. Helton at her home address, as [AT&T] claim[s]." *Helton*, 805 F. Supp. 2d at 246. Additionally, the Benefits Committee failed to address key pieces of evidence conflicting with its decision, including documents indicating the 1998 SPD was sent only to active management employees, not deferred vested pensioners like Helton, and the fact that some AT&T records indicated that it had not sent Helton a commencement package in 2001. While an administrator has the authority to weigh conflicting pieces of evidence, it abuses its discretion when it fails to address conflicting evidence. *See Williams*, 609 F.3d at 633 (finding ERISA plan's denial of benefits was unreasonable where administrator failed to address evidence conflicting with its determination). For these same reasons, it also is clear that

AT&T failed to engage in a reasoned and principled decision-making process, as required by the fifth *Booth* factor.

Finally, regarding the last *Booth* factor, AT&T suffered from a conflict of interest because it served as Pension Plan administrator at the same time as it was responsible for funding the Pension Plan. This conflict of interest may have motivated the Benefits Committee, which was composed of five AT&T executives, to omit from the record unfavorable evidence in AT&T's possession; fail to investigate Helton's reasonable explanations for why she might not have received the Burlingame letter or 1998 SPD; and adopt an interpretation of the Pension Plan unsupported by its plain language and fatal to Helton's claim.

In sum, examining the relevant *Booth* factors in light of the evidence the district court properly admitted leads us to conclude, as did the district court, that AT&T abused its discretion in denying Helton's claim.[5]

## C.

Having determined that the district court properly found that AT&T's decision to deny Helton's claim was unreasonable, we next consider the district court's remedy-awarding Helton "retroactive benefits." AT&T argues that even if the district court did not err in finding the Benefits Committee's decision unreasonable, the case should have been remanded to

---

[5]As noted earlier, it was error for the district court to consider the testimony of Adam and Banwart. However, given the overwhelming evidence properly before the court that AT&T's decision to deny Helton's claim was unreasonable, the evidentiary error was harmless.

For the same reason, AT&T's argument that the district court committed reversible error in admitting a number of other pieces of evidence fails. Appellant's Br. at 53-56. Even if we assume, without deciding, that the district court erred in admitting this evidence, AT&T fails to demonstrate that the judgment was "substantially swayed" by any such errors. *United States v. Heater*, 63 F.3d 311, 325 (4th Cir. 1995) (quotation omitted).

the administrator for reconsideration. This Court reviews for abuse of discretion a district court's decision regarding whether to remand a case to an ERISA plan administrator. *See Sheppard*, 32 F.3d at 125.

AT&T correctly notes that in many instances, remand is the appropriate remedy. *Id.*; *see also Bernstein*, 70 F.3d at 789. *But see Berry v. Ciba-Geigy Corp.*, 761 F.2d 1003, 1008 (4th Cir. 1985) (stating that "remand should be used sparingly"). However, remand is not required, particularly in cases in which evidence shows that the administrator abused its discretion. *See Weaver v. Phoenix Home Life Mut. Ins. Co.*, 990 F.2d 154, 159 (4th Cir. 1993) ("[A] remand for further action is unnecessary here because the evidence clearly shows that [the ERISA plan administrator] abused its discretion."); *see also Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 856 (3d Cir. 2011); *Miller*, 72 F.3d at 1075 (Calabresi, J., concurring in part, dissenting in part) ("[W]hen the trustees have demonstrated a manifest unwillingness to give fair consideration to evidence that supports the claimant, the claim should not be returned to the trustees.").

AT&T concedes that it did not argue to the district court that Helton's claim should be remanded to the Benefits Committee for reconsideration were the court to hold that AT&T abused its discretion in denying Helton relief. Appellant's R. Br. at 13 ("Helton correctly asserts AT&T did not argue at trial or in its proposed Findings of Fact and Conclusions of Law that . . . the proper remedy would be to remand to the [Benefits] Committee for an additional review."). We have held that an "issue[ ] raised for the first time on appeal generally will not be considered" absent a showing that "refusal to consider the newly-raised issue would be plain error or would result in a fundamental miscarriage of justice." *Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993).

Given that remand is not required, particularly in cases in which an ERISA plan administrator abused its discretion,

denying AT&T's newly-raised request for remand constitutes neither plain error nor a fundamental miscarriage of justice. Therefore, because AT&T failed to raise this argument before the district court, it is waived on appeal. *Cf. Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, 481 F.3d 355, 372 n.7 (6th Cir. 2009) (stating ERISA plan administrator would have waived right to argue remand is the appropriate remedy for improper denial of benefits had it not raised the issue before the district court).

### D.

Finally, AT&T argues that the remedy the district court granted—allowing Helton to recoup her lost benefits—was unavailable under *Amara*, in which the Supreme Court held that a court may not reform or alter the terms of a benefit plan in crafting a remedy for an ERISA violation. 131 S.Ct. at 1877. AT&T asserts that because the pension plan provides for payment of benefits only on a "forward-going basis," the district court was not entitled to award Helton "retroactive" benefits. Appellant's Br. at 23. As we have already explained in detail, the Pension Plan's plain language does not preclude the award of retroactive benefits. The district court did not, therefore, contravene, much less reform, the Plan's terms in awarding the remedy that it did. Consequently, the district court did not err in awarding Helton "retroactive" benefits under Section 1132(a)(1)(B).

### IV.

Having determined that the district court correctly held that AT&T improperly denied Helton's claim for retroactive benefits under Section 1132(a)(1)(B), we next consider AT&T's argument that the district court incorrectly found that AT&T had violated ERISA's reporting and disclosure provisions. AT&T contends that the district court clearly erred in finding that AT&T failed to send Helton the 1998 SPD. We disagree.

ERISA requires that, in the event of a material change to a plan eligibility requirement, plan administrators furnish participants with a summary description outlining the change within 210 days of the end of the year in which the change was adopted. 29 U.S.C. § 1024(b)(1)(B). In cases in which ERISA requires a plan administrator to notify participants of a plan change, ERISA implementing regulations mandate that the administrator "use measures reasonably calculated to ensure actual receipt of the material by plan participants. . . ." 29 C.F.R. § 2520.104b-1(b)(1). The parties agree that the Special Update constituted a material change to the Plan and thus AT&T was required to timely notify Helton, a participant, about the change.

At trial, the parties provided conflicting evidence regarding whether AT&T sent Helton the Burlingame letter and the 1998 SPD. In particular, there was conflicting evidence as to whether individuals on unapproved leaves of absence, like Helton, would have been sent the Burlingame letter. *Helton*, 805 F. Supp. at 239-40. For example, Stoia testified that the letter was sent to individuals designated as "active management employees," including deferred vested pensioners and "Leave of Absence Employees," on January 1, 1997. J.A. 4472.

Stoia admitted on cross-examination, however, that she did not know whether the letter had been sent to employees on unofficial leaves of absence, like Helton. Further, Helton testified she did not receive the Burlingame letter. She also emphasized that AT&T failed to produce any record indicating that the Burlingame letter had been mailed to her specifically, and that evidence regarding how Helton had been characterized in AT&T's employee database at the time of the mailing had been destroyed.

The parties also presented conflicting evidence regarding whether the 1998 SPD was sent to deferred vested pensioners who were not active employees, like Helton. *Helton*, 805 F.

Supp. 2d at 240. In particular, Stoia testified that the 1998 SPD had been sent to any individual with an interest in the Pension Plan, including deferred vested pensioners. By contrast, Helton reaffirmed that she did not receive the 1998 SPD and also introduced documentary evidence that the 1998 SPD was not sent to deferred vested pensioners like herself. And Adam, who was responsible for overseeing AT&T pension plan mailings in 1997 and 1998, testified that the 1998 SPD was not sent to deferred vested pensioners.[6] Moreover, Helton emphasized—and AT&T conceded—that the company produced no records, such as physical records of mailings, mailing lists, or business records, showing that it mailed Helton the 1998 SPD.

Weighing this conflicting evidence, a task properly left to the district court sitting as fact-finder, *De Loach*, 262 F.2d at 777, the district court made the factual determination that the Pension Plan "did not distribute the 1998 SPD in a manner reasonably certain to ensure Ms. Helton's actual receipt." *Helton*, 805 F. Supp. 2d at 247. This finding is not clearly erroneous, and we therefore must uphold it.[7]

## V.

For these reasons, we affirm the decision of the district court.

*AFFIRMED*

---

[6]Unlike with actions brought under Section 1132(a)(1)(B), when adjudicating a claim for violation of an ERISA statutory provision, a district court is not barred from considering evidence unknown to the administrator when it rendered its coverage determination. *Smith v. Sydnor*, 184 F.3d 356, 365 (4th Cir. 1999). Therefore, it was proper for the district court to consider Adam's testimony in analyzing the Section 1024(b)(1)(B) claim.

[7]AT&T also argues that Helton is not entitled to a remedy for its failure to satisfy ERISA's disclosure requirements. Regardless of the merits of this claim, this argument is irrelevant since the district court did not grant Helton a remedy for AT&T's failure to send the 1998 SPD.