# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

ALEXANDER S. THOMPSON, JR.,

    *Plaintiff-Appellant,*

v.

LIFE INSURANCE COMPANY OF NORTH
AMERICA,

    *Defendant-Appellee,*

    and

CIGNA CORPORATION; CIGNA GROUP
INSURANCE,

    *Defendants.*

No. 01-1383

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, Senior District Judge.
(CA-99-630-5-BR)

Argued: December 5, 2001

Decided: March 4, 2002

Before MICHAEL and TRAXLER, Circuit Judges, and
Joseph R. GOODWIN, United States District Judge for the
Southern District of West Virginia, sitting by designation.

---

Reversed and remanded by unpublished per curiam opinion. Judge
Traxler wrote an opinion concurring in part and dissenting in part.

---

## COUNSEL

**ARGUED:** David Alan Vesel, DAVID A. VESEL, P.A., Raleigh,
North Carolina, for Appellant. Mark Stanton Thomas, MAUPIN,

TAYLOR & ELLIS, P.A., Raleigh, North Carolina, for Appellee. **ON BRIEF:** Joanne J. Lambert, MAUPIN, TAYLOR & ELLIS, P.A., Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

### I.

Alexander Thompson was covered under a long-term disability benefits plan (the Plan) administered by Life Insurance Company of North American (LINA). In 1998, Mr. Thompson was working when he experienced severe angina. He was admitted to the hospital and underwent emergency cardiac bypass surgery. Before the surgery, Dr. Scanlan, a cardiologist, noted that Mr. Thompson also might be suffering from chronic obstructive pulmonary disease (COPD). The cardiac surgery was successful and Mr. Thompson was released from the hospital. In his second post-operative visit in late February, Dr. Scanlan referred Mr. Thompson to Dr. Vora, a pulmonologist. Dr. Vora diagnosed Mr. Thompson with severe COPD, noting that he had lost 70% of his breathing capacity and that his breathing condition would only worsen. Dr. Vora found that Mr. Thompson's COPD permanently disabled him from all activities, but was unrelated to his previous cardiac problems.

Mr. Thompson filed his claim for long-term disability benefits on July 22, 1998, asserting that he was permanently disabled due to "severe obstructive airways disease and emphysema." J.A. 177. On September 21, 1998, LINA wrote Mr. Thompson a letter denying his claim. J.A. 245-49. The denial relied on the pre-existing condition limitation in the Plan. *Id.* Specifically, LINA wrote:

> Since you consulted with Dr. Anderson on 9/12/1997 for hypercholesterolemia which is a condition related directly or indirectly to the cardiac condition that stopped you from working, you do not satisfy the Pre-Existing Condition Limitation as previously defined. Therefore, you are not eligible for Monthly Benefit (sic) under the Long Term Disability policy BK 3990.

J.A. 248. The letter also advised Mr. Thompson of his appellate rights, indicating that if he disputed the denial, he could send a written statement of reasons for his disagreement and "a letter from his physician(s) explaining and supplying information contrary to the above." *Id*.

On October 5, 1998, Mr. Thompson appealed LINA's benefits disqualification. Mr. Thompson wrote:

> The cardiac condition is not the condition that has disabled me and prevented my return to work. The diseases that have caused my disability are COPD (severe obstructive airways disease) and emphysema, which have absolutely nothing to do with hypercholesteralemia (sic).

J.A. 224.

On November 18, 1998, LINA affirmed its earlier finding of ineligibility because "the pre-existing condition limitation" was not satisfied. J.A. 251. On May 6, 1999, in response to a letter from Mr. Thompson's lawyer, LINA reaffirmed its position that Mr. Thompson was disqualified from benefits because it found his disability resulted from a pre-existing cardiac condition. J.A. 256-57.

In September 1999, Mr. Thompson filed this action in federal court, alleging an improper denial of long-term disability benefits. In its answer, LINA again stated its position that Mr. Thompson was not eligible for benefits because he did not satisfy the pre-existing condition limitation. Then, on November 14, 2000, more than two years after Mr. Thompson filed his claim, LINA moved for summary judgment and raised for the first time the Plan's "active service" provision

as a basis for its denial of benefits. J.A. 5, 397, 403. The district court granted LINA's motion, relying on the Plan's active service provision. The court reasoned that since Mr. Thompson was not in "active service" when he was diagnosed with COPD, LINA properly denied his claim. Mr. Thompson now appeals that decision.

II.

Thompson argues that the district court erred by awarding summary judgment based on a reason LINA raised for the first time upon judicial review. We agree.

In enacting ERISA, Congress established procedural safeguards to ensure that fiduciaries would administer employee benefit plans "solely in the interest of the participants and beneficiaries." 29 U.S.C. §§ 1104(a)(1) & 1001(b); *see also Makar v. Health Care Corp. of the Mid-Atlantic*, 872 F.2d 80, 83 (4th Cir. 1989). Fiduciaries must provide "full and fair reviews" of claims for benefits. 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1 (2001). Plan administrators are required to state the reason(s) for a denial and provide the specific plan provision(s) that formed the basis of the decision. 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1; *see also Weaver v. Phoenix Home Life Mut. Ins. Co.*, 990 F.2d 154, 158 (4th Cir. 1993). Fiduciaries must notify claimants of their decisions in writing and in language likely to be understood by one of ordinary intelligence. 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1; *see also Grossmuller v. Int'l Union*, 715 F.2d 853, 858 (3d Cir. 1983). The decision must be objectively reasonable and based on substantial evidence. *Ellis v. Metro Life Ins. Co.*, 126 F.3d 228, 233 (4th Cir. 1997).

These procedural safeguards are at the foundation of ERISA. Fiduciary compliance is essential to upholding the administrative integrity of this statutory scheme. *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 15 (1987); *Weaver*, 990 F.2d at 157. For these reasons, courts generally find abuse of discretion where a fiduciary neglects his responsibilities. *Weaver*, 990 F.2d at 159; *see also Marolt v. Alliant Techsystems, Inc.*, 146 F.3d 617, 618 (8th Cir. 1998); *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 697 (7th Cir. 1992); *Grossmuller*, 717 F.2d at 855.

LINA would have us bypass ERISA's procedural safeguards. Here, LINA denied Mr. Thompson's claim for benefits in September 1998, explaining that his cardiac condition disqualified him from receiving benefits under the Plan's pre-existing condition limitation. LINA also relied on the pre-existing condition limitation to affirm the denial on appeal. When Mr. Thompson filed suit, LINA's Answer to Mr. Thompson's Complaint again set forth the pre-existing condition limitation as the sole reason for its denial. Not until the summary judgment stage in November 2000, did LINA assert the Plan's "active service" provision as the rationale for its denial of benefits.

At this late stage, allowing LINA to raise a new basis for denial would deprive Mr. Thompson of the procedural fairness guaranteed to claimants under ERISA. Quite simply, Mr. Thompson and every other claimant is statutorily entitled to expect that plan administrators will follow mandatory rules of procedure. LINA had a fiduciary duty to consider Mr. Thompson's claim fully and fairly and to provide him with the specific disqualifying reason or reasons. *See Weaver*, 990 F.2d at 158. A district court's review is limited to whether the rationale set forth in the initial denial notice is reasonable. A court may not consider a new reason for claim denial offered for the first time on judicial review. We find that the district court erred in relying on LINA's "active service" argument when it reviewed LINA's decision for abuse of discretion.

### III.

#### A.

Having found that judicial review is limited to the reason stated in the denial notice, we now review that reason. *See DeNobel v. Vitro Corp.*, 885 F.2d 1180, 1186 (4th Cir. 1989) (reviewing the fiduciary's decision directly instead of remanding where there was a developed record of the fiduciary's review and immediate review was in the interest of justice). Where a plaintiff appeals the grant of summary judgment, this court reviews the decision de novo and applies the same standards employed by the district court. *Brogan v. Holland*, 105 F.3d 158, 161 (4th Cir. 1997).

Here, the Plan provides that payment of benefits begins when the fiduciary receives "due proof" of eligibility. We find that this provi-

sion granted LINA the discretion to interpret and apply the terms of the Plan. *See, e.g., Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998) (en banc) (finding that plan language requiring "satisfactory evidence" conferred discretion). Where the Plan confers discretion, we review the plan administrator's decision for abuse of discretion. We will not disturb that decision if it is objectively reasonable and based upon substantial evidence. *Ellis*, 126 F.3d at 232 (4th Cir. 1997); *Brogan*, 105 F.3d at 161.

Because LINA serves as both the insurer and claims administrator, we apply a modified abuse of discretion review to counteract the conflict of interest present. *Bedrick v. Travelers Ins. Co.*, 93 F.3d 149, 152 (4th Cir. 1996). The greater the incentive for the fiduciary to benefit himself by a certain interpretation, the more objectively reasonable the fiduciary's decision must be and the more substantial the evidence must be to support it. *Ellis*, 126 F.3d at 233.

B.

A pre-existing condition limitation generally excludes coverage during the first year for illnesses resulting from underlying conditions that were present in the three months prior to the insurer's assumption of coverage. Here, the Plan's pre-existing condition limitation provides that LINA will not be responsible to pay benefits for any period of disability that "*results*, directly or indirectly, from an injury or sickness" for which the employee sought treatment in the three months prior to the effective date of his insurance coverage. J.A. 245 (emphasis added).

Here, LINA applies the limitation because it believes the disabling condition "relates" to the pre-existing condition. In letters denying Mr. Thompson's claim, LINA applied the limitation and explained that the two conditions were "related," because Mr. Thompson was diagnosed with COPD while being treated for his heart condition.

A dictionary definition of the term "results" means "to happen or exist as a result of a cause." Webster's II New College Dictionary 946 (2d ed. 1995). "Relates," on the other hand, merely requires any "connection" or "association." *Id.* at 935. "Results" requires a causal link; "relates" does not. Although LINA found a relationship between the

two conditions, it did not find that Mr. Thompson's pre-existing cardiac condition caused his COPD condition.

We find that LINA's interpretation of the pre-existing condition limitation is not objectively reasonable or based on substantial evidence. All the physicians in the record asserted that Mr. Thompson's pre-existing cardiac condition was not related to his disabling pulmonary illness. LINA made its decision without seeking the opinions of other physicians. The record shows that there was no causal connection between Mr. Thompson's two illnesses. Therefore, Mr. Thompson's COPD was not a pre-existing condition and the limitation was inapplicable.

Based on LINA's unreasonable interpretation and lack of substantial evidence, we find that LINA abused its discretion. LINA's actions do not reflect those of an unconflicted fiduciary. We reverse the district court's grant of summary judgment for LINA and remand for the entry of judgment for the plaintiff and a determination of appropriate attorney's fees and costs.

*REVERSED AND REMANDED*

TRAXLER, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority's determination that the district court erred in upholding the denial of ERISA benefits based upon a reason LINA first raised before the district court. Plan administrators must set forth the specific reasons for denial "in a manner calculated to be understood by the participant" and provide for a "full and fair review" of any such denial. 29 U.S.C.A. § 1133 (West 1999); 29 C.F.R. § 2560.503-1(g) (2001); *Weaver v. Phoenix Home Life Mut. Ins. Co.*, 990 F.2d 154, 157 (4th Cir. 1993). "These procedural guidelines are at the foundation of ERISA," *Weaver*, 990 F.2d at 157, and it was error for the district court to affirm the LINA's denial on a basis never advanced by LINA before the administrator.

I respectfully dissent, however, from the majority's decision to remand this case for the entry of judgment for Thompson. I believe the proper remedy in these circumstances is to remand to the district

court with directions that the case be returned to the plan administrator for a full and fair review of Thompson's claim for disability benefits caused by his chronic obstructive pulmonary disease. *See Weaver*, 990 F.2d at 159 (noting that "where the plan administrator has failed to comply with ERISA's procedural guidelines and the plaintiff/participant has preserved his objection to the plan administrator's noncompliance, the proper course of action for the court is remand to the plan administrator for a 'full and fair review.'"); *Berry v. Ciba-Geigy Corp.*, 761 F.2d 1003, 1007 n.4 (4th Cir. 1985) (also noting propriety of remand in such circumstances because "[t]he question of eligibility must be resolved by the plan in the first instance, not the court.") (internal quotation marks omitted).

Finally, because I would hold that the plan administrator failed to comply with ERISA's procedural guidelines and, therefore, that remand is necessary, I find it unnecessary to resolve in this proceeding the thorny question of whether the "due proof" provision in Thompson's policy is sufficient to confer discretionary authority upon LINA or whether we would ultimately review a properly-issued decision under a *de novo* standard of review.