**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 22-2173**

JEREMY SMITH,

      Plaintiff - Appellant,

v.

COX ENTERPRISES, INC. WELFARE BENEFITS PLAN,

      Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Patricia Tolliver Giles, District Judge.  (1:20–cv–01434–PTG–IDD)

Argued:  November 1, 2024                  Decided:  February 4, 2025

Before WYNN and RUSHING, Circuit Judges, and Mary Geiger LEWIS, United States District Judge for the District of South Carolina, sitting by designation.

Reversed and remanded by published opinion.  Judge Wynn wrote the opinion, in which Judge Lewis joined. Judge Rushing wrote an opinion concurring in the judgment.

**ARGUED:**  Benjamin W. Glass, III, BENJAMIN W. GLASS & ASSOC. PC, Fairfax, Virginia, for Appellant.  Nikole M. Crow, WOMBLE BOND DICKINSON (US) LLP, Atlanta, Georgia, for Appellee.  **ON BRIEF:**  Ian R. Dickinson, WOMBLE BOND DICKINSON (US) LLP, Charlottesville, Virginia, for Appellee.

WYNN, Circuit Judge:

After receiving long-term disability benefits from his employer for seven years, Jeremy Smith was informed that these benefits would be terminated. Seeking to have his benefits restored, Smith filed suit under the Employee Retirement Income Security Act of 1974 ("ERISA") against Cox Enterprises, Inc. Welfare Benefits Plan, an ERISA plan operated by Smith's employer. The district court found that Smith was not "totally disabled" as defined by the plan and granted summary judgment to the defendant.

For the reasons set forth below, we hold that the plan administrator failed to discuss conflicting evidence and thus did not engage in a principled and reasoned decision-making process. Accordingly, we reverse and remand to the district court for further proceedings.

I.

In January 2008, Smith began working for Cox Enterprises, Inc., as a customer care technician. Four years later, he had to leave the job when a herniated disk began causing severe pain in his lower back. That year, he had a lumbar discectomy and then a spinal-fusion surgery. In 2014, he underwent a laminectomy and revision fusion. He was then diagnosed with post-laminectomy syndrome.

In 2012, Aetna,[1] Cox's ERISA plan administrator, approved Smith's claim for long-term disability which proceeded in two phases. For the first twenty-four months of long-term disability—the "own occupation" period—Smith needed to show that "solely because

---

[1] In 2017, Hartford Life and Accident Insurance Company acquired Aetna's group benefits business. To avoid confusion, we follow the district court in referring only to "Aetna."

of injury or disease" he could not work at his own occupation. J.A. 798.[2] After those first twenty-four months—the "any occupation" period—Smith needed to show that he is "not able, solely because of injury or disease, to work at any reasonable occupation." *Id.*

The plan defines "reasonable occupation" as "any gainful activity which you are or reasonably could become qualified to perform through education, training or experience earning equal to your [long-term disability] benefit but no less than 60 percent of pre-disability earnings." *Id.* Smith entered the "any occupation" period in 2014. In that and several subsequent years, Aetna reapproved Smith's long-term disability, concluding that Smith remained unable to perform "any reasonable occupation."

In June 2016, the Social Security Administration determined that Smith had become disabled on June 1, 2015, and thus qualified for disability benefits on that date. In 2018, as part of his first review for Social Security Disability Insurance, he underwent a consultative examination conducted by Dr. Lisa Harris on behalf of the Virginia Department of Rehabilitative Services, a state disability determination agency capable of making decisions on disability claims for Social Security Disability Insurance. Dr. Harris assessed that Smith could only sit for about half an hour for each hour during the workday. The Social Security Administration thereafter recertified his disability benefits.

In late 2018, Aetna began another periodic review of Smith's claim. His primary care physician, Dr. Steven Hartline, informed Aetna that Smith was only capable of working two hours a day for two days a week due to his chronic pain and inability to sit or

---

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

stand for more than ten or fifteen minutes at a time. Reviewing the claim for Aetna, nurse Holly Shepler assessed that Smith had "residual work capacity" and sought additional information. J.A. 370. Dr. Hartline responded that Smith could "walk for about 15 minutes normally" but that "his main issue [was] staying in [one] position for more than 15 minutes[, that he] need[ed] to alternate between sitting[,] standing[,] and laying," and that he would "do each for 15–20 min[utes] through the day." J.A. 555 (capitalization standardized).

Aetna continued the investigation by having Dr. Timothy Lee perform an independent medical evaluation on June 14, 2019. Dr. Lee concluded that Smith was able to work an eight-hour day for forty hours a week subject to numerous conditions, including that he needed to change positions every thirty minutes and limit standing and walking to thirty minutes every hour. Based on this evaluation, vocational counselor Maria O'Brien conducted a transferable-skill analysis for Aetna and identified four sedentary jobs she asserted Smith could reasonably perform. On July 16, 2019, Aetna mailed a termination letter to Smith, informing him that he was capable of working and thus would no longer receive benefits through Cox's plan.

On November 6, 2019, Smith submitted a *pro se* appeal of the termination of benefits to Aetna. As part of the appeal, Smith sent Dr. Harris's consultative examination report from his 2018 Social Security recertification. In turn, Aetna hired two independent doctors, Dr. Joseph Walker III and Dr. Neil Gupta, to review the appeal. These doctors evaluated Smith's medical records but never examined him themselves.

4

Dr. Walker found that Smith was capable of working an eight-hour day five days a week and that he could sit for 45 minutes at a time, for a total of six hours in an eight-hour day; could stand for 30 minutes at a time, for a total of four hours in an eight-hour day; and could walk for 15 minutes at a time, for a total of two hours in an eight-hour day. Dr. Gupta found that Smith could stand for up to two hours and walk for up to two hours in an eight-hour day.

On April 16, 2020, Aetna sent an appeal denial letter affirming its termination of Smith's benefits prompting Smith to initiate this lawsuit.

In a written opinion, the district court granted summary judgment to the plan. *Smith v. Cox Enters. Inc.*, No. 1:20-cv-01434, 2022 WL 4624727 (E.D. Va. Sept. 30, 2022). The court found that Aetna's termination decision was supported by adequate materials and substantial evidence. *Id.* at *5–6. It reasoned that it was permissible for Aetna to discount Dr. Hartline's opinion, as he had only been Smith's physician for one week when he wrote his opinion recommending work limitations and he admitted that his opinion was based on the assessment of another doctor. *Id.* at *6. The court was satisfied that the two independent reviewing doctors had considered Dr. Harris's report, even though they did not discuss it, because they included the report in a list of records they reviewed. *Id.* at *8. In response to Smith's claim that Aetna had improperly discounted the Social Security Administration's determination that he was disabled, the court found that it was reasonable for Aetna to do so because Aetna had never received the medical information underlying Social Security's initial 2016 determination. *Id.* Smith timely appealed.

5

II.

"In an appeal under ERISA, we review a district court's decision de novo, employing the same standards governing the district court's review of the plan administrator's decision. When, as here, an ERISA benefit plan vests with the plan administrator the discretionary authority to make eligibility determinations for beneficiaries," we apply an abuse-of-discretion standard to the plan administrator's determination. *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 629–30 (4th Cir. 2010) (citation omitted).

"Under the abuse-of-discretion standard, we will not disturb a plan administrator's decision if the decision is reasonable, even if we would have come to a contrary conclusion independently." *Id.* at 630. "To be held reasonable, the administrator's decision must result from a 'deliberate, principled reasoning process' and be supported by substantial evidence." *Id.* (quoting *Guthrie v. Nat'l Rural Elec. Coop. Ass'n Long-Term Disability Plan*, 509 F.3d 644, 651 (4th Cir. 2007)).

To assess the reasonableness of a plan administrator's decision, this Court has identified eight nonexclusive factors to consider, including "whether the decisionmaking process was reasoned and principled" and "whether the decision was consistent with the procedural and substantive requirements of ERISA." *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342 (4th Cir. 2000). The "procedural and substantive requirements of ERISA" relevant here include that when an employee benefit plan denies an employee's claim, it must "provide adequate notice in writing to [the] participant or beneficiary . . . setting forth the specific reasons for such denial, written in a

6

manner calculated to be understood by the participant." 29 U.S.C. § 1133(1). The plan must then "afford a reasonable opportunity to [the] participant . . . for a full and fair review by the appropriate named fiduciary of the decision denying the claim." *Id.* § 1133(2).

### III.

### A.

Smith first challenges Aetna's denial of his appeal on the grounds that it did not properly consider Dr. Harris's consultative examination related to his Social Security recertification. We agree and conclude that Aetna abused its discretion when it denied his appeal.

Federal regulations promulgated for the administration and enforcement of ERISA oblige a plan administrator's adverse disability benefit determination to "set forth, in a manner calculated to be understood by the claimant . . . [a] discussion of the decision, including an *explanation of the basis for disagreeing with* . . . [a] disability determination regarding the claimant presented by the claimant to the plan made by the Social Security Administration." 29 C.F.R. § 2560.503-1(j)(6)(i)(C) (emphasis added).

The termination letter provided the following discussion regarding Smith's Social Security determination:

> We understand that you have been approved for Social Security Disability (SSD) benefits. However, our disability determination and the SSD determination are made independently and are not always the same. The difference between our determination and the SSD determination may be driven by the Social Security Administration (SSA) regulations. For example, SSA regulations require that certain disease/diagnoses or certain education or age levels be given heavier or even controlling weight in determining whether an individual is entitled to SSD benefits. Or, it may be

7

> driven by the fact that we have information that is different from what SSA considered.
>
> We have not been provided with the basis for the SSD determination, and the evidence that was relied on for the SSD determination has not been identified to us. Therefore, even though you are receiving SSD benefits, we are unable to give it significant weight in our determination, and we find that you are not (or you are no longer) eligible for LTD benefits based on the plan definition of Totally Disabled quoted above.

J.A. 381–82.

In response, in his appeal of that decision, Smith submitted Dr. Harris's consultative examination. Yet Aetna left the relevant language virtually unchanged when it sent the appeal denial letter. In fact, it altered only the last sentence, which now reads: "As of January 3, 2014 the definition of disability changed from the inability to perform your own occupation to the inability to perform any reasonable occupation. Even though you are receiving SSD benefits, we are unable to give it significant weight in our determination." J.A. 404.

These boilerplate statements do not constitute a "discussion of the decision" within the meaning of the regulations. The appeal denial letter makes no mention of Dr. Harris. Aetna never engages in a meaningful discussion of the Social Security determination, initially or on recertification. And the uncertainty inherent in the use of the word "may" belies the fact that it did not do so: Aetna does not state why it reaches the opposite conclusion of the Social Security Administration; rather, it merely suggests possible reasons that the Social Security Administration's determination could be discounted. Worse yet, these suggestions are revealed to be meaningless boilerplate, as the very next paragraph claims that Aetna never received the records forming the basis of the

8

determination. But Smith did submit Dr. Harris's consultative examination in response to Aetna's initial termination letter. Aetna thus did not "includ[e]" a sufficient "explanation of the basis for disagreeing with . . . [the] disability determination . . . made by the Social Security Administration." 29 C.F.R. § 2560.503-1(j)(6)(i)(C).

We are not alone in reaching such a conclusion. As other circuits have held, "[e]vidence of a Social Security award of disability benefits is of sufficient significance that failure to address it offers support that the plan administrator's denial was . . . an abuse of discretion" because such "[w]eighty evidence . . . cannot be ignored." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 679 (9th Cir. 2011) (footnote omitted); *see, e.g.*, *Schexnayder v. Hartford Life & Accident Ins. Co.*, 600 F.3d 465, 471 (5th Cir. 2010) ("Failure to address a contrary SSA award can suggest 'procedural unreasonableness' in a plan administrator's decision."); *Glenn v. MetLife*, 461 F.3d 660, 669 (6th Cir. 2006) ("[A]n ERISA plan administrator's failure to address the Social Security Administration's finding that the claimant was 'totally disabled' is yet another factor that can render the denial of further long-term disability benefits arbitrary and capricious."); *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 772–73 (7th Cir. 2010) ("An administrator is not forever bound by a Social Security determination of disability, but an administrator's failure to consider the determination in making its own benefit decisions suggests arbitrary decisionmaking."); *cf. Austin v. Cont'l Cas. Co.*, 216 F. Supp. 2d 550, 556 (W.D.N.C. 2002) ("Although [Social Security] determinations are not infallible, federal courts are keenly aware of the close scrutiny which claims for Social Security disability benefits receive.").

9

In addition to failing to abide by an applicable regulation, the absence of discussion in Aetna's letters contravenes our case law. "While an administrator has the authority to weigh conflicting pieces of evidence, it abuses its discretion when it fails to address conflicting evidence." *Helton v. AT&T Inc.*, 709 F.3d 343, 359 (4th Cir. 2013). Aetna's appeal denial letter nowhere weighs—and does not even mention—Dr. Harris's consultative evaluation, which formed a critical basis for the Social Security Administration's disability recertification. Indeed, the only place in the administrative record that Aetna arguably considers the consultative report is in Dr. Walker and Dr. Gupta's independent medical evaluations. In each report, Dr. Harris's consultative report is listed under the label "records submitted for review." J.A. 407, 425 (capitalization standardized). Yet, despite summarizing the findings by at least ten other doctors, Dr. Walker never mentions Dr. Harris again. And Dr. Gupta neglected to mention Dr. Harris in a reverse chronology summarizing Smith's clinical file since 2012.

In sum, there is not one sentence dedicated to Dr. Harris's findings in Aetna's appeal denial letter or either of its independent medical evaluations. The failure to address conflicting evidence—especially the highly probative evidence created for the Social Security Administration—denied Smith his statutory right to "a full and fair review." 29 U.S.C. § 1133(2). Aetna did not engage in a deliberate, principled reasoning process.

Because we conclude Aetna abused its discretion, we must decide the remedy. This Court has held that "remand should be used sparingly" but "is most appropriate 'where the plan itself commits the [plan administrator] to consider relevant information which [it] failed to consider.'" *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 609 (4th Cir. 1999) (quoting

10

*Berry v. Ciba-Geigy Corp.*, 761 F.2d 1003, 1008 (4th Cir. 1985)). And, here, the plan documents mirror the language of the statute, providing that the appeal committee or reviewer "is required to conduct a 'full and fair review' of all comments, documents and records submitted by you related to your appeal." J.A. 804; *cf.* 29 U.S.C. § 1133(2). We will thus remand this case to the district court to remand the matter to Aetna.

### B.

Smith has therefore prevailed on part of his case, and Aetna must reconsider his claim. He asks for more, however, and presses other arguments about Aetna's process in support of reversal and the award of past-due benefits. We are not persuaded.[3]

First, Smith contends that our decision in *Harrison v. Wells Fargo Bank, N.A.*, 773 F.3d 15 (4th Cir. 2014), compelled Aetna to seek out his Social Security records—and that Aetna's failure to do so merits reversal and the award of past benefits. He notes that Aetna had prior authorization permitting the Social Security Administration to release his records directly to it. At oral argument, Aetna represented that procuring the records would be impracticable because the Social Security Administration processes the requests too slowly for plan administrators to meet the statutory ERISA deadline. *See* Oral Arg. at 22:30–

---

[3] Nor are we persuaded by Smith's argument that the district court's reasoning relied on *post hoc* justifications created by Cox for the purposes of litigation. While we agree with Smith that *post hoc* explanations undermine claimants' statutory right to a "full and fair review" of their denials, *see, e.g.*, *Thompson v. Life Ins. Co. of N. Am.*, 30 F. App'x 160, 163–64 (4th Cir. 2002) (per curiam), we do not believe that the district court improperly relied on Cox's lower court briefing to arrive at its interpretation of the termination letter. The district court was clear that its "review [was] limited to the reasons stated in Aetna's denial notice," and not *post hoc* explanations. *Smith*, 2022 WL 4624727, at *10 n.10.

23:30, https://www.ca4.uscourts.gov/OAarchive/mp3/22-2173-20241101.mp3. We need not address this issue because Smith can present his full Social Security records to Aetna on remand. *See Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 790 (4th Cir. 1995).

Second, Smith argues that Aetna's ultimate determination regarding his work restrictions was arbitrary and unsupported and thus necessitates reversal. As evidence of the unsupported nature of Aetna's determination, Smith notes that the opinion of a non-examining doctor, Dr. Walker, formed the basis of the finding that he can sit for six hours in a workday despite none of the examining doctors determining that he can sit for that duration. But we need not decide whether the six-hour limitation falls within the permissible bounds set by the available medical evidence. On remand, Aetna will be obliged to rebalance the medical evidence in light of Dr. Harris's report and thus will have to reconsider how much weight to give the independent medical reports. Similarly, because Aetna has not yet considered all of the evidence and has not "demonstrated a manifest unwillingness to give fair consideration to evidence that supports the claimant," we find no reason to grant reversal at this time. *Helton*, 709 F.3d at 360 (quoting *Miller v. United Welfare Fund*, 72 F.3d 1066, 1075 (2d Cir. 1995) (Calabresi, J., concurring in part and dissenting in part)).

Finally, Smith seeks attorneys' fees, costs, and prejudgment interest. The district court never passed upon the question of attorneys' fees, and we decline to do so in the first instance. *Cf. Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1028–29 (4th Cir. 1993) (en banc) (noting that "ERISA places the determination of whether attorneys' fees should be awarded in an ERISA action completely within the discretion of the district

12

court," guided by a fact-intensive five-factor test). We leave this issue for the district court to consider at its discretion on remand.

## IV.

For the foregoing reasons, we reverse the district court's entry of summary judgment and remand for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*

RUSHING, Circuit Judge, concurring in the judgment:

A federal regulation required Aetna to explain to Smith its "basis for disagreeing with or not following" the Social Security Administration's "disability determination" that Smith "presented" to Aetna. 29 C.F.R. § 2560.503-1(j)(6)(i)(C). Our precedent recognizes a related duty for a plan administrator to "address conflicting evidence" when denying benefits. *Helton v. AT&T Inc.*, 709 F.3d 343, 359 (4th Cir. 2013). After Aetna terminated Smith's disability benefits, Smith appealed and sent Aetna Dr. Harris's consultative examination report, which she completed for his 2018 Social Security Disability (SSD) recertification. In the letter affirming its termination of Smith's benefits, Aetna did not mention Dr. Harris's report and stated: "We have not been provided with the basis for the SSD determination, and the evidence that was relied on for the SSD determination has not been identified to us." J.A. 404.

While it appears accurate that Smith did not provide Aetna "the basis" for Social Security's determination that he is disabled, it is not accurate that Smith failed to identify any "evidence that was relied on" for his recertification, namely, Dr. Harris's report. Aetna's incorrect assertion that it lacked this evidence calls into question whether Aetna considered it in affirming termination of Smith's benefits. Because Aetna failed to address Dr. Harris's conflicting report, I agree with the majority's decision to remand this matter for Aetna to confront this evidence and exercise its discretion. *See Elliott v. Sara Lee Corp.*, 190 F.3d 601, 609 (4th Cir. 1999).

14