**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 24-1419**

REBECCA WONSANG,

        Plaintiff – Appellee,

v.

RELIANCE STANDARD LIFE INSURANCE COMPANY,

        Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Rossie David Alston, Jr., District Judge. (1:23−cv−00001−RDA−IDD)

Argued: March 21, 2025                                      Decided: June 13, 2025

Before WILKINSON, WYNN, and RICHARDSON, Circuit Judges.

Affirmed by unpublished opinion. Judge Wilkinson wrote the opinion, in which Judge Wynn joined. Judge Richardson wrote a dissenting opinion.

**ARGUED:** Joshua Bachrach, WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP, Philadelphia, Pennsylvania, for Appellant. Benjamin W. Glass, III, BENJAMIN W. GLASS, III & ASSOCIATES, Fairfax, Virginia, for Appellee. **ON BRIEF:** Peter M. Moore, WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP, McLean, Virginia, for Appellant. Damon R. Miller, BENJAMIN W. GLASS, III & ASSOCIATES, Fairfax, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

WILKINSON, Circuit Judge:

This case concerns plaintiff Rebecca Wonsang's claim for long-term disability benefits under a group policy provided by Reliance Standard. After initially approving Wonsang's claim, Reliance later found that she was no longer disabled and terminated her benefits, prompting Wonsang to file suit under ERISA. The district court found Reliance's decision erroneous and granted summary judgment in favor of Wonsang. Finding no reversible error, we now affirm.

I.

From 2014 to 2016, plaintiff Rebecca Wonsang worked as a physical therapist assistant for Legacy Healthcare. As a full-time employee at Legacy, Wonsang was entitled to coverage under a group disability insurance policy provided by Reliance. Per the terms of the policy, Reliance is also the "claims review fiduciary" with "the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits." J.A. 61.

The policy obligates Reliance to pay a monthly benefit to Wonsang if she is "Totally Disabled." J.A. 65. The definition of "Totally Disabled" varies based on the length of coverage. For the first 24 months, "Totally Disabled" means the "Insured cannot perform the material duties of his/her Regular Occupation." J.A. 57. After 24 months, "Totally Disabled" means the "Insured cannot perform the material duties of Any Occupation." J.A. 57. The policy defines "Any Occupation" as "an occupation normally performed in the national economy for which an Insured is reasonably suited based upon his/her education, training or experience." J.A. 56.

2

Wonsang submitted a claim for coverage in May 2016. Her claim form was signed by her primary care physician, Dr. Lee Hinnant, who stated that Wonsang was "suffering from neck pain, extreme fatigue, [right upper quadrant] pain, and weakness" and that she was "unable to work" as a physical therapist because she "can't stand for long periods or do heavy lifting." J.A. 241. Dr. Hinnant further noted that the "etiology of the symptoms is not fully clear" and that additional testing was needed. J.A. 241.

In September 2016, a nurse employed by Reliance reviewed Wonsang's medical records and concluded that she was "precluded from engaging in any sustained activity on a frequent and consistent basis." J.A. 191. The nurse's findings were largely based on MRI and X-ray imaging of Wonsang's spine and a subsequent evaluation by a spine specialist. The imaging showed that Wonsang was suffering from "broad based disc protrusion," "mild to moderate canal narrowing," and "moderate intrinsic disc degeneration." J.A. 191. Following these results, the specialist diagnosed Wonsang with hypermobility syndrome, scoliosis, and intervertebral disc displacement—conditions known to cause chronic neck and back pain. Shortly after the nurse's report, Reliance approved Wonsang's claim and paid her benefits for the duration of the initial 24 month period of the policy.

In April 2017, Wonsang was involved in a car accident and began struggling with dizziness and brain fog in addition to her neck pain. As a result, her neurologist, Dr. Ruben Cintron, sent Reliance a letter stating that due to "her symptoms of fatigue and poor mental stamina she is certainly not employable at this point and [I] don't foresee any significant change." J.A. 252. In September 2017, an in-house Reliance nurse reviewed Wonsang's updated medical records and concluded that Wonsang "remains precluded from engaging

3

in any sustained activity on a frequent and consistent basis ongoing due to dizziness, blurred vision, mental fogginess, poor mental stamina, fatigue, headaches, and neck pain." J.A. 194. Based on this review, Reliance continued paying Wonsang benefits beyond the initial 24 month period of the policy because it determined she was unable to work in "Any Occupation" for which she is reasonably qualified.

Years later, in June 2022, Reliance reviewed Wonsang's updated medical records and sent her a letter terminating her benefits. The letter provided three reasons for the termination. First, medical records from one of Wonsang's treating physicians, Dr. Virgil Balint, noted that although Wonsang remained "under his care for chronic neck pain" and her most recent exam showed her "cervical range of motion was limited by pain," her latest "test results were all negative." J.A. 225. Second, Dr. Hinnant, who evaluated Wonsang following a COVID diagnosis, reported that while Wonsang claimed she had significant fatigue and difficulty with daily activities, her physical examination results were "normal," showing "full range of motion" and no signs of "cognitive issues or lethargy." J.A. 226. Third, Reliance cited evidence that Wonsang had authored and published a book, maintained a blog and an active reading list, and performed occasional content editing for others—activities it viewed as incompatible with "cognitive deficits sufficient to preclude working in any occupation." J.A. 226.

On November 1, 2022, Wonsang submitted an appeal of Reliance's initial decision. In a letter dated December 19, 2022, Wonsang informed Reliance that she had not received a decision within the 45-day deadline under ERISA and that she would consider her administrative remedies exhausted if she did not receive an appeal decision within ten days.

4

Wonsang filed this lawsuit in the Eastern District of Virginia on January 3, 2023. Reliance issued a decision denying Wonsang's appeal on March 29, 2023.

The district court found Reliance's decision erroneous and granted summary judgment in favor of Wonsang. It first held that de novo review applied, rather than abuse of discretion, because Reliance forfeited its discretionary authority under the policy by failing to comply with ERISA's procedural requirements. The court nonetheless concluded that Reliance's decision could not be upheld under either standard of review. Its central reasoning was that Reliance improperly cherrypicked evidence and ignored the findings of Wonsang's treating physicians. *See Wonsang v. Reliance Standard Ins. Co.*, 729 F. Supp. 3d 563, 577–81 (E.D. Va. 2024). The district court also rejected Reliance's request for a remand to consider the applicability of a limitation for self-reported conditions, which Reliance inexplicably did not address in its initial denial or appeal decision. *Id.* at 582.

Reliance timely appealed. We now affirm the district court's judgment.

## II.

Before reaching the merits, we must first address Reliance's argument that the district court erred by resolving factual disputes at the summary judgment stage. *See* Oral Arg. at 39:40–40:14; Opening Brief at 17 n.3, 19 n.5. At the outset of its opinion, the district court noted that it was "difficult for the Court to determine whether there are any disputes between the parties as to the facts" because Wonsang failed to specifically identify the facts she believed were disputed. *Wonsang*, 729 F. Supp. 3d at 568.

After the district court noted Wonsang's failure to identify the disputed facts, the court made clear that it nonetheless proceeded to derive the undisputed facts "from a careful

5

review of (i) Reliance's statement of undisputed facts, which are uncontested by Wonsang; (ii) Wonsang's 'Statement of Facts' and Reliance's response thereto; and (iii) the Administrative Record as a whole." *Id.* Removing any doubt, the court further introduced its recitation of the facts with the sentence "The undisputed facts are as follows." *Id.* And when the district court explained its analysis of the merits, it did not weigh the facts. The court simply held that, even crediting the evidence cited by Reliance, it could not overcome the wealth of undisputed medical documents establishing the severity of Wonsang's condition. *See id.* at 578–79. The district court further determined that Reliance's failure to rebut the findings of Wonsang's treating physicians was "a failure that satisfies even the less-stringent abuse-of-discretion standard." *Id.* at 581.

The trial court's approach here was thus not inconsistent with *Tekmen v. Reliance Standard Life Insurance Co.*, 55 F.4th 951 (4th Cir. 2022). *Tekmen* simply held that a district court may conduct a Rule 52 bench trial in the unusual scenario where it must resolve disputed issues of material fact in an ERISA denial-of-benefit case. Here, as we shall explain, the evidence of disability did not admit of a genuine dispute, and the district court did not err in proceeding accordingly.

III.

We thus turn to the merits. Reliance's primary argument is that the district court erred in applying de novo review rather than an abuse of discretion standard. Reliance contends that it is entitled to "the discretionary authority to interpret the plan" under the express terms of the policy and that it does not forfeit this right to deference simply by failing to issue an appeal decision within ERISA's 45-day deadline. *See* Opening Brief at

6

22–29. Because Reliance's decision does not withstand scrutiny even under the less-rigorous abuse of discretion standard, we need not resolve this issue.

As the district court found, it is undisputed that every physician who considered Wonsang's ability to work concluded she "was not capable of *any* work." *Wonsang*, 729 F. Supp. 3d at 578. These opinions were based on further undisputed evidence that multiple MRIs showed that Wonsang suffered from "cervical instability." J.A. 702 (assessment of Dr. Sunil Patel); J.A. 715 (assessment of Dr. Balint) (noting that a 2020 "MRI of the cervical spine" showed "small disc herniation" and that Wonsang was "grossly limited and with pain"); J.A. 191 (assessment of Reliance's in-house nurse) (citing 2016 MRI and X-ray images showing "broad based disc protrusion," "mild to moderate canal narrowing," and "moderate intrinsic disc degeneration"). While Reliance was not obligated "to credit the opinions of treating physicians over other evidence," *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003), it *was* at a minimum required to "address conflicting evidence" and "engage in a deliberate, principled reasoning process," *Smith v. Cox Enterprises v. Welfare Benefits Plan*, 127 F.4th 541, 547 (4th Cir. 2025). Reliance did neither.

Start with Reliance's claim that Dr. Balint's 2021 notes stated that Wonsang's "test results were all negative." J.A. 225. It is unclear, both from the record and the briefs, which "test results" Reliance is referencing. In any event, it is clear from Dr. Balint's notes that Wonsang's "most recent MRI" demonstrated a "right C4-5 small disc herniation and a central stenosis at C5-6." J.A. 516. Dr. Balint concluded from these results that Wonsang's spine was "grossly limited and with pain." J.A. 516; *see also* J.A. 704–10. How this is

7

supposed to undermine, rather than support, the conclusion that Wonsang suffers from a severe spinal impairment remains unexplained.

Reliance's attempt to lean on Dr. Hinnant's notes fails for a similar reason. In its letter denying Wonsang's benefits, Reliance emphasized that Dr. Hinnant's September 2021 notes following Wonsang's COVID diagnosis showed that her physical examination was "normal" and that she had "full range of motion" and no signs of "cognitive issues or lethargy." J.A. 226. But, for one thing, Dr. Hinnant's notes plainly indicate that Wonsang was "[p]ositive for malaise/fatigue," "joint pain," and "cognitive dysfunction." J.A. 517. For another, it is unclear how Wonsang having full range of motion would undermine her claim that she cannot perform sustained activities without debilitating fatigue and neck pain due to severe spinal damage. Reliance does not say.[1]

Nor does it prove much that Wonsang can occasionally read or write for leisure. Again, Wonsang's claim is that her spinal injuries prevent her from consistently engaging in sustained activities. Whether or not she can read or write for intermittent periods of time from the comfort of her home is irrelevant. To perform a job Wonsang "obviously would be required to do much more than perform a small subset of her duties for a relatively short duration." *DuPerry v. Life Ins Co. of N. Am.*, 632 F.3d 860, 870 (4th Cir. 2011). The undisputed opinions of Wonsang's treating physicians along with the results of several

---

[1] In its briefing Reliance also points to notes from Ms. Caryn Grogan, Wonsang's physical therapist. Putting aside that Reliance did not point to these records when it denied Wonsang's claim, they are unhelpful. At most Grogan's notes demonstrate that Wonsang experienced a temporary and mild reduction in symptoms from physical therapy. *See* J.A. 724–53.

MRIs demonstrate that she cannot do so. Reliance has done nothing to call this evidence into question.[2]

## IV.

We last address Reliance's argument that the district court erred by rejecting its request for a remand to consider the applicability of a "Self-Reported Conditions Limitation" in the policy. The Self-Reported Conditions Limitation states that benefits are "limited to a total of 24 months" for conditions which "cannot be verified using generally accepted standard medical procedures and practices." J.A. 71. Although Reliance did not rely on this limitation when it denied Wonsang's claim, it now argues that it must be permitted to consider the limitation's applicability because courts are "without authority to direct the plan administrator to administer the Plan contrary to its terms." *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 239 (4th Cir. 2008).

Reliance is not entitled to a remand. Our case law establishes that a remand to the plan administrator is inappropriate where it "would serve no purpose." *DuPerry*, 632 F.3d at 876. No purpose would be served by remanding here. As we have explained, the record

---

[2] Reliance also asks us to consider a report from Dr. Howard Grattan purportedly concluding that Wonsang is capable of performing certain sustained work. Although Dr. Grattan's report was not before Reliance at the time of its decision, Reliance nonetheless argues that "exceptional circumstances" justify looking beyond the administrative record. Opening Brief at 40. We disagree. To show exceptional circumstances Reliance must provide a compelling explanation for "why the evidence proffered was not submitted to the plan administrator." *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1027 (4th Cir. 1993). It has not provided such an explanation. Reliance could have requested a vocational report from Dr. Grattan or another expert in the many years prior to its decision. After choosing not to do so, it cannot now claim "exceptional circumstances."

is replete with evidence that Wonsang's spinal impairment *was* "verified using generally accepted standard medical procedures," namely MRI imaging. Because it is clear that the Self-Reported Conditions Limitation does not apply, remanding for Reliance to consider its applicability would be futile.

V.

The district court conducted a lengthy analysis of Wonsang's claim. Given the opinions of multiple physicians, backed by MRI imaging, it is clear that the plaintiff suffers from a severe spinal impairment that would broadly prevent her "from performing the material duties of Any Occupation." J.A. 57. There is nothing to be gained from stringing this case out with further proceedings, and we decline to do so.

For the foregoing reasons, the judgment of the district court is affirmed.

*AFFIRMED*

10

RICHARDSON, Circuit Judge, dissenting:

I respectfully dissent.  Because this case presents a genuine dispute of material fact, the district court erred in resolving it on summary judgment.  *See Tekmen v. Reliance Standard Life Ins.*, 55 F.4th 951, 959, 961 (4th Cir. 2022).  I would thus vacate and remand for a bench trial without deference to the plan administrator.  *See Fessenden v. Reliance Standard Life Ins.*, 927 F.3d 998, 1004–07 (7th Cir. 2019).